476 April 17, 2025 No. 16

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*
*v.*
SHANE AARON AKINS,
Petitioner on Review.

(CC 18CR78427) (CA A176701) (SC S070807)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 26, 2024.

Erica L. Herb, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Anne Fujita Munsey, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

BUSHONG, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

Duncan, J., dissented and filed an opinion in which James, and Masih, JJ., joined.

_____
* Appeal from Clackamas County Circuit Court, Todd L. Van Rysselberghe, Judge. 329 Or App 538 (2023) (nonprecedential memorandum opinion).

**BUSHONG, J.**

This criminal case requires us to decide two evidentiary issues related to allegations of child sexual abuse. The first issue involves the admissibility of expert testimony that child victims often delay reporting the abuse. In *State v. Perry*, 347 Or 110, 218 P3d 95 (2009), we held that such evidence can be admissible to rebut a defendant's claim that a delay in reporting meant that the abuse did not occur, but we have not previously decided whether such evidence can be admissible in the absence of such a claim. The second issue involves the admissibility of out-of-court statements made by a child declarant under an exception to the hearsay rule provided in OEC 803(18a)(b), which makes such statements admissible in a child sexual abuse case when the declarant testifies at trial. Defendant contends that that exception does not apply, because the victim, who was 15 years old when she made the challenged statements, was an adult when she testified at trial.

The trial court denied defendant's pretrial motions to exclude both types of evidence, and a jury convicted defendant on all charges. The Court of Appeals affirmed, adhering to its own precedents on both evidentiary issues. *State v. Akins*, 329 Or App 538 (2023) (nonprecedential memorandum opinion). We allowed review and now affirm on both issues.

On the first issue, we conclude that the trial court did not err in denying defendant's pretrial motion to exclude the expert testimony, because, as we will explain, that evidence could be relevant in this case to the jury's assessment of the victim's credibility even if defendant did not use the delay to impeach her, and the evidence was not unduly prejudicial. On the second issue, we agree with the trial court and the Court of Appeals that, under OEC 803(18a)(b), evidence of out-of-court statements made by a child victim of sexual abuse is admissible if the declarant was a child when she made the statements and she subsequently testifies at trial, even if the declarant is an adult at the time of her trial testimony. As we will explain, that conclusion follows from the text and context of OEC 803(18a)(b).

## I.  BACKGROUND

### A.  *Historical Facts*

We take the historical facts from the trial court record, viewing that record in the manner most consistent with the trial court's rulings, and drawing all reasonable inferences consistent with those rulings. *State v. Wilson*, 323 Or 498, 510-11, 918 P2d 826 (1996); *State v. Carlson*, 311 Or 201, 214, 808 P2d 1002 (1991).

The victim, M, was born in 2003 and lived with her mother and defendant, her biological father, until her parents separated in 2013. In 2018, when M was 15 years old, she told her mother that, during the first decade of her life, defendant had sexually abused her on multiple occasions. Her mother reported that disclosure to the police, and M was referred to Child Abuse Response and Evaluation Services (CARES) for an evaluation. As a part of that evaluation, M stated in a recorded interview that the abuse had started when she was about 5 or 6 years old and included two incidents of anal sodomy and three incidents of vaginal touching. She also explained that she had not previously reported the abuse because she did not know any better at first, but as she got older and realized that it was wrong, it became harder to bear.

As a result of those allegations, defendant was charged with two counts of first-degree sodomy and three counts of first-degree sexual abuse.

### B.  *Trial Proceedings*

#### 1.  *Delayed disclosure evidence*

Defendant filed a motion *in limine* to exclude any expert testimony explaining that it is common for child victims of sexual abuse to wait before reporting the abuse. Defendant did not dispute that such evidence is scientifically valid, and he conceded that the state would be able to lay an adequate foundation for its admission. He asserted, however, that delayed disclosure evidence is admissible under *Perry* only to refute a defendant's contention that an allegation of abuse should be disbelieved because of the delay in reporting it, a contention that the defendant did

not intend to make here. In response, the state argued that the evidence was admissible under *State v. White*, 252 Or App 718, 288 P3d 985 (2012), in which the Court of Appeals had concluded that expert testimony about delayed disclosure was independently relevant and admissible regardless of whether the defendant relied on the fact of delay to argue that the allegations were fabricated. The trial court denied the motion to exclude the evidence, explaining that it was "relevant for its independent significance to a possible inference that the jury could draw *** to find a motive of fabrication."

At trial, the state called Jennifer Wheeler, a forensic interviewer at CARES, to testify about how and why children often delay disclosing sexual abuse. Wheeler explained that it is "widely accepted" in the field of forensic interviewing that children do not always disclose abuse "right away." The delay in disclosure "can be anywhere from weeks or months to years." Wheeler acknowledged that delayed disclosure "has nothing to do with whether or not the allegation actually happened." Defendant did not object to Wheeler's testimony when it was offered and received into evidence at trial.

After the jury retired to deliberate, the prosecutor asked the court, "out of an abundance of caution," to make a record regarding whether the probative value of the expert testimony about delayed disclosure was substantially outweighed by the danger of unfair prejudice under OEC 403. The trial court noted that defendant had not expressly raised an OEC 403 objection,[1] but it concluded that Wheeler's trial testimony was "highly relevant" and that any unfair prejudice did not outweigh the probative value of that testimony.

2. *Out-of-court hearsay statements*

Defendant also filed a motion *in limine* to exclude all of M's out-of-court hearsay statements, arguing that the

---

[1] In his motion *in limine*, defendant had contended that any delayed reporting evidence would be "bolstering and vouching" and "impermissible based on the evidence code," but he had not expressly contended that such evidence was inherently unfairly prejudicial and thus categorically inadmissible under OEC 403. Defendant did not raise an OEC 403 objection or any other objection to Wheeler's testimony at trial.

hearsay exception in OEC 803(18a)(b) did not apply, because M was 18 years old at the time of trial. The trial court denied the motion. At trial, M's mother testified about what M had told her when M first reported the abuse in 2018, when she was 15 years old. Two of M's close friends also testified that M had told them about the abuse in 2018. M had told one friend about the abuse via text messages, which were admitted as an exhibit at trial. Wheeler, the CARES forensic interviewer, also testified about what M had told her when she interviewed M at CARES in 2018. That interview was recorded, and the recording was played for the jury at trial.

A jury found defendant guilty of two counts of first-degree sodomy and three counts of first-degree sexual abuse. Defendant appealed.

C. *Appellate Proceedings*

Defendant contended in his first assignment of error on appeal that the trial court erred in admitting expert testimony about delayed disclosure of sexual abuse, and he contended in his second, third, and fourth assignments of error that the trial court had erred in admitting evidence of M's out-of-court hearsay statements under OEC 803(18a)(b).

On the delayed disclosure issue, defendant acknowledged that the evidence would be admissible under the Court of Appeals' decision in *White* even if he did not use the delay to challenge M's credibility, but he argued that *White* was wrongly decided and conflicts with this court's decision in *Perry*. On the hearsay issue, defendant contended that the text, context, and legislative history of OEC 803(18a)(b), and the Court of Appeals' decision in *State v. Lamb*, 161 Or App 66, 983 P2d 1058 (1999), all support the conclusion that the hearsay exception does not apply when the declarant is an adult at the time of trial.

The Court of Appeals affirmed on the delayed disclosure issue, summarily rejecting defendant's arguments that *White* should be overruled. The Court of Appeals also affirmed on the hearsay issue, concluding that defendant's argument was foreclosed by its prior decision in *State v. Juarez-Hernandez*, 316 Or App 741, 503 P3d 487, *rev den*,

369 Or 856 (2022).[2] *Akins*, 329 Or App at 541. Defendant petitioned for, and we allowed, review on both issues.

## II.   DISCUSSION

On review, defendant contends that the trial court erred in denying his pretrial motion to exclude the delayed disclosure expert testimony and in admitting evidence of M's out-of-court hearsay statements under OEC 803(18a)(b). We review those rulings for legal error. *State v. Jesse*, 360 Or 584, 599-60, 385 P3d 1063 (2016) (whether evidence is relevant is a question of law); *State v. Cook*, 340 Or 530, 537, 135 P3d 260 (2006) (a trial court's ultimate conclusion whether hearsay testimony fits within an exception is reviewed for legal error). We begin with the delayed disclosure evidence.

A.   *Delayed Disclosure Evidence*

Defendant argues that the trial court should have granted his motion *in limine* because expert testimony on delayed disclosure is admissible under *Perry* only to rebut a defendant's contention that the delay undermined the victim's credibility, a contention that defendant did not intend to make. We evaluate that argument "in light of the record made before the trial court when it issued the order, not the trial record as it may have developed" at trial. *State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012); *see also State v. Sperou*, 365 Or 121, 137, 442 P3d 581 (2019) (stating that "our review of a trial court's ruling is limited to the record as it had developed at the time of the ruling; we do not evaluate a court's pretrial decision with the benefit of hindsight by, for example, taking into account what happened at trial").

Defendant represented to the court in his motion *in limine* that, unlike the defendant in *Perry*, he was not planning to argue that M's delay in disclosing the abuse meant that the abuse had not occurred. Defendant acknowledges that the evidence would have been admissible under the Court of Appeals' decision in *White* even without that contention, but he argues here, as he did in the Court of

---

[2] In *Juarez-Hernandez*, the Court of Appeals examined the text, context, and legislative history of OEC 803(18a)(b) and concluded that a trial court had not erred in admitting out-of-court hearsay statements by a victim of sexual abuse who had been 17 years old when the statements were made but had turned 18 by the time that she testified at trial.

Appeals, that *White* is inconsistent with our decision in *Perry*. Defendant contends that the expert testimony about delayed reporting should have been excluded pretrial and that such evidence is not admissible unless a defendant "opens the door" by contending that the delay in reporting undermines an alleged victim's credibility. According to defendant, without that contention, the testimony is irrelevant, unduly prejudicial, and amounts to improper vouching evidence.

In response, the state contends that our decision in *Perry* does not limit the relevance of expert testimony on delayed reporting to rebutting a defendant's contention that a delay in reporting implies fabrication. In the state's view, the testimony could be relevant as part of the state's case-in-chief to help the jury assess M's credibility even if defendant does not contend that the delay undermined that credibility. The state further contends that the testimony was not inherently prejudicial or improper vouching because the expert could make it clear that the reporting delay had nothing to do with whether the abuse had occurred.[3] As we will explain, we agree with the state.

We begin by explaining what we decided—and did not decide—in *Perry*. The defendant in *Perry* was charged with various crimes after his wife's ten-year-old niece reported that the defendant had sexually abused her. The victim had disclosed the abuse to her father several months after it had occurred. The state planned to call an expert, the medical director at CARES Northwest, to testify at trial about "a phenomenon known as 'delayed reporting' by child victims of sexual abuse." *Perry*, 347 Or at 114. The defendant filed a motion *in limine* to exclude that testimony, contending that the state could not lay an adequate foundation establishing its scientific validity and that the evidence was irrelevant and unfairly prejudicial. The trial court held a hearing under OEC 104 to address the issue.

At the OEC 104 hearing, the expert testified that this "phenomenon" was "'common'" and "'well understood'"

---

[3] An argument could be made that defendant did not preserve this issue for appellate review, but because the trial court addressed the issue at the close of trial at the state's request, we address the issue in this opinion.

and that there was "a body of literature" addressing the issue. *Id.* The trial court overruled the defendant's objections and concluded that the witness could testify "'with respect to the scientific validity of delayed reporting as a characteristic of sexual abuse.'" *Id.* at 115 (quoting the trial court's ruling).

On review, we agreed with the trial court. We first observed that the defendant's main argument was that the expert's testimony was inadmissible because it "was being offered to show that the victim's delayed reporting *affirmatively established* that the victim had been sexually abused." *Id.* at 117 (emphasis in original). We rejected that argument for two reasons. First, we noted that the "defendant's case was built, in part, on the proposition that the victim's delay in reporting gave rise to an inference that she had *not* been abused." *Id.* (emphasis in original). The expert's testimony "served a legitimate purpose" to show that there was a scientific basis for rejecting that proposition. *Id.* Second, we noted that the expert had "never stated that delayed reporting was affirmatively probative of whether sexual abuse actually had occurred." *Id.* Rather, the expert had "specifically conceded that delayed reporting itself was *not* a diagnostic tool in that regard." *Id.* (emphasis in original).

Next, we explained that the evidence could be admissible because the "defendant's theory of the case was that the victim was fabricating." *Id.* at 118. Under those circumstances, we explained, "a trier of fact could infer that the victim's delay in reporting tended to show that the events about which the victim testified had never happened." *Id.* We concluded that, because the testimony "tended to counter that inference," it was relevant "in that respect at least." *Id.* We further concluded that the evidence was not unfairly prejudicial, because the improper inference that the victim had been abused simply because she waited to report the abuse was not "inherent in the central thesis" of the expert's testimony that delayed reporting "is common in verified cases of child sexual abuse." *Id.* at 119-20.[4]

---

[4] We also concluded that the state had laid an adequate foundation to establish the scientific validity of the delayed reporting evidence in that case. *Perry*, 347 Or at 120-26. Defendant does not challenge the scientific validity of the delayed reporting evidence, or the adequacy of the foundation laid for its admission in this case.

*Perry* did not hold that expert testimony about delayed disclosure is relevant *only* if the defendant expressly contends that a victim's delay in reporting the allegations suggests that they were fabricated. We stated in *Perry* that the evidence can be relevant to counter an inference that "a trier of fact" could make, not that the evidence can be relevant only to rebut an argument that the defendant has made. Thus, it does not logically follow from our decision in *Perry* that expert testimony about delayed disclosure is admissible only if the defendant uses the delay to challenge the victim's credibility. Instead, whether such evidence is categorically inadmissible when the defendant does not make that contention depends on whether the evidence is nonetheless relevant under OEC 401, and if so, whether its probative value is "substantially outweighed by the danger of unfair prejudice" to the defendant, OEC 403.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Here, one fact that was "of consequence" to the determination of this case was whether M's testimony that defendant had sexually abused her was credible. The jury could infer that M's testimony was less credible because she had delayed reporting the abuse; the expert testimony was relevant to rebut that inference.

We have previously held that expert testimony that can help a jury assess a witness's credibility can be relevant.[5] For example, in *State v. Middleton*, 294 Or 427, 429-30, 657 P2d 1215 (1983), a defendant introduced statements by the victim that were inconsistent with the victim's initial accusation that the defendant—her father—had raped her. In rebuttal, the state offered the testimony of two social workers to explain that the victim's behavior—including her decision to recant her accusation—was typical of victims of familial sexual abuse. We held that the evidence was

---

[5] To be admissible, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." OEC 702. We have described this requirement as the "helpfulness inquiry" under OEC 702. *Jesse*, 360 Or at 593-94. Defendant does not contend that the expert testimony at issue here did not meet OEC 702's helpfulness requirement.

relevant because it "could help the jury better assess the [victim's] credibility." *Id.* at 436.

Similarly, in *State v. Gherasim*, 329 Or 188, 190, 985 P2d 1267 (1999), a rape victim had identified the defendant as her assailant, but the defendant contended at trial that he had arrived on the scene after the assault and had attempted to help the victim. The defendant proffered the testimony of a psychiatrist that the victim experienced dissociative amnesia, which had caused her to be confused about the assault. The trial court excluded the testimony, but we reversed. Because the expert's testimony was that the victim's dissociative amnesia condition "affected her capacity to remember what had occurred on the night that she was assaulted[,]" we concluded that it "was evidence that [the] defendant was entitled to present" to help the jury assess the credibility of the victim's testimony. *Id.* at 198.

We subsequently explained the significance of *Middleton* and *Gherasim* in *Jesse*. There, we stated that we had concluded in both cases that "expert testimony that modified inferences *that the jury otherwise might be expected to draw* from the evidence" could be relevant and helpful to the jury. *Jesse*, 360 Or at 596 (emphasis added). The relevance of the expert testimony in those cases, and in *Perry*, as explained above, depended on inferences that the jury might be expected to draw from the evidence, regardless of the arguments made by the parties.

Here, the jury would be aware that M was alleging that defendant had sexually abused her many years before she had reported the abuse to her mother, and that defendant was denying that the abuse had occurred. Under those circumstances, the jury "might be expected to draw" an inference that the delay in reporting meant that the abuse had not occurred, even if defendant did not make that specific contention. And because the state had the burden of proving beyond a reasonable doubt that the abuse had occurred, it was entitled to present evidence to rebut that inference as part of its case-in-chief, as we have recognized.

For example, in *State v. Zybach*, 308 Or 96, 775 P2d 318 (1989), the child victim of an alleged rape waited nine

months to report the incident. The trial court admitted evidence of encounters between the victim and the defendant during that nine-month period to explain the reasons for the delay. The Court of Appeals reversed, but we reversed the Court of Appeals and affirmed the trial court, concluding that the evidence was relevant "to prove why the victim delayed reporting the crime." *Id.* at 99. We further concluded that the evidence was admissible in the state's case-in-chief "under its obligation to prove the charge beyond a reasonable doubt." *Id.* at 100. We explained that "it was permissible for the state to bring out 'up front' the delayed reporting" to rebut the potential inference that the jury might draw about the victim's credibility from the fact that she had delayed reporting it. *Id.*

That conclusion is supported by a subsequent case, *State v. Serrano*, 355 Or 172, 324 P3d 1274 (2014), where we held that a police criminalist's testimony about how physical evidence was catalogued and stored was relevant, even though the defendant had not challenged the integrity of the physical evidence linking the defendant to the crime scene. We observed that the criminalist's testimony "tended to make the probative weight of the physical evidence greater than it would have been without [the] testimony." *Id.* at 192. We explained that the state was "not required to wait" for the defendant to challenge the probative weight of the physical evidence, *id.*, because, as we had recognized in *Zybach*, "a party bearing the burden of proof is entitled to anticipate, as part of its case-in-chief, inherent weaknesses that might make its case less believable." *Serrano*, 355 Or at 191.

Although defendant suggests that the jury would not consider the delay in reporting when assessing M's credibility, nothing in this case precluded the jury from drawing that seemingly plausible inference. Given how critical credibility was in this case, the state was entitled to anticipate that inference and offer evidence to address it as part of its case-in-chief, even if the defendant represented to the court that the defendant was not expressly contending that the reporting delay meant that the abuse had not occurred. Accordingly, we conclude that the trial court did not err in denying defendant's pretrial motion to exclude that evidence as irrelevant.

Nor did the trial court err in denying defendant's motion in *limine* on the grounds that the evidence, categorically, was unfairly prejudicial and thus, inadmissible under OEC 403. The evidence was not too prejudicial categorically because the expert can make it clear that the delay did *not* mean that the abuse had occurred, as in *Perry* and as Wheeler ultimately testified in this case. In *Perry*, we acknowledged that expert testimony about delayed disclosure could be unfairly prejudicial if the testimony increased "the likelihood that jurors would find that the complainant in fact *was* abused simply because she waited to make her allegations." 347 Or at 119 (emphasis in original). But we rejected the defendant's argument that the testimony was unfairly prejudicial categorically because, as discussed above, the danger that the jury might use the evidence to infer that the abuse *had* occurred was not "inherent" in expert testimony that delayed reporting is common in child sexual abuse cases. *Id.* at 119-20. The same is true here.

To the extent that defendant's OEC 403 challenge in this court is based on how the evidence came in at trial, not on the trial court's pretrial ruling on defendant's motion in *limine*, that challenge is unpreserved for appellate review because defendant did not assert an OEC 403 objection when the testimony was offered and received at trial, as noted above. *See Pitt*, 352 Or at 574 (stating that, after the trial court has denied a pretrial motion to exclude evidence, parties should make "the same or other objections, if warranted, when a party offers the evidence during trial"); *Perry*, 347 Or at 118 (stating that, even though the trial court had denied a defendant's pretrial motion to exclude evidence, "it was defendant's responsibility to point out to the trial court" any additional objections to the evidence when it was offered at trial). Because our decision in this case is based on the record at the time of the motion in *limine*, it does not preclude trial courts in other cases from assessing whether such testimony is inadmissible under OEC 403 in the context in which the testimony may be offered at trial.

We further conclude that the expert testimony was not categorically inadmissible as vouching evidence. Impermissible vouching occurs when a witness makes "[a]

direct comment on the credibility of a witness or a statement that is 'tantamount' to stating that another witness is truthful[.]" *State v. Beauvais*, 357 Or 524, 543, 354 P3d 680 (2015). Stating that a witness has not been coached or is not deceptive can be tantamount to a direct comment on credibility, as are other statements that are "commonly understood ways of signaling a declarant's belief that a witness is telling the truth." *Id.* Such testimony is inadmissible to ensure that "'the jury's role in assessing witness credibility is not usurped by another witness's opinion testimony.'" *State v. Black*, 364 Or 579, 585, 437 P3d 1121 (2019) (quoting *State v. Chandler*, 360 Or 323, 330, 380 P3d 932 (2016)).

In determining whether expert testimony constitutes impermissible vouching, we have explained that the critical inquiry is "whether the testimony provides an opinion on truthfulness or, instead, provides a tool that the factfinder could use in assessing credibility." *Black*, 364 Or at 593. Testimony that tells the jury a witness's opinion about the truthfulness of another witness is generally inadmissible as vouching, but testimony that provides "information that [jurors] could use to form their own opinions" about credibility is not. *Id.* at 590-91. Expert testimony that reporting delays by victims of child sexual abuse are "common" but have "nothing to do with" whether the abuse had occurred is information that can help a jury assess the credibility of an alleged victim's testimony without signaling that the expert believed that the victim was telling the truth. Thus, the testimony was not categorically inadmissible as vouching.[6]

In summary, expert testimony that delayed reporting is common in victims of child sexual abuse can be relevant to help a jury assess the victim's credibility even if the defendant does not use the delay to challenge that credibility. Such testimony is not so unfairly prejudicial that it must be excluded unless the defendant "opens the door" by specifically contending that the jury should infer from the

---

[6] Again, to the extent that defendant contends that Wheeler's trial testimony went further than allowed by the court's pretrial ruling or constituted vouching when considered in the context of the evidence that was received at trial, that contention was not preserved for appellate review, because defendant did not object to Wheeler's testimony when it was offered and received at trial or contend that Wheeler's testimony went further than what was allowed by the trial court's pretrial ruling.

delay that the allegations were fabricated. Nor is such testimony categorically inadmissible as vouching; rather, it can provide information that jurors may use to assess the victim's credibility without providing the expert's own opinion on the victim's truthfulness. Accordingly, we conclude that the trial court did not err in denying defendant's pretrial motion to exclude that testimony.

In reaching that conclusion, we do not mean to suggest that expert testimony that relates to a victim's credibility will always be both relevant and helpful to the jury. Expert testimony connecting the expert's explanation of delayed reporting to the specific reasons offered by the victim for the delay could be inadmissible as vouching. In other instances, the probative value of such testimony may be substantially outweighed by the danger of unfair prejudice to the defendant, making the evidence inadmissible under OEC 403 or at least requiring an appropriate limiting instruction.[7] But in a child sexual abuse case, where the defendant denies that the abuse occurred and the victim delays reporting the abuse, the type of expert testimony offered here to rebut a plausible inference that the jury could make—that the delay undermined the victim's credibility—is not categorically inadmissible. Thus, the trial court did not err in denying defendant's pretrial motion to exclude that evidence.

## B.   *Out-of-Court Hearsay Statements*

Defendant contends that the trial court erred in applying OEC 803(18a)(b) to admit testimony from others about what M had said when she disclosed the abuse in 2018, when she was 15 years old. According to defendant, the hearsay exception provided in that rule does not apply, because M was an adult when she testified at trial. Resolving that contention requires us to interpret the rule, applying "our traditional method of statutory interpretation[,] focusing on text, context, and legislative history." *Gollersrud v. LPMC, LLC*, 371 Or 739, 745, 541 P3d 864 (2023) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)). We begin

---

[7] In *Perry*, we noted that, if the defendant thought that an expert "was adding a different (and irrelevant) 'spin' to the relevant facts that she was reporting, then it was for the defendant to point that out and to seek to limit her testimony." 347 Or at 119.

with the text, which "is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

OEC 803(18a)(b) provides, in pertinent part:

> "A statement made by a person concerning an act of abuse as defined in ORS 107.705 or 419B.005 *** is not excluded by [OEC 802] if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made ***."[8]

There is no dispute that the acts alleged in the indictment constitute "act[s] of abuse" within the meaning of OEC 803(18a)(b).[9] Paragraph (b) of OEC 803(18a) does not limit its application to testifying declarants who were of a specific age when they made a qualifying statement or when testifying at trial, but paragraph (d) states that the rule "applies to a child declarant, a declarant who is an elderly person as defined in ORS 124.050 or an adult declarant with a developmental disability." Thus, at a minimum, to be admissible under OEC 803(18a)(b), the victim must have been a child— under the age of 18—an elderly person, or an adult with a developmental disability when they made the statements being offered under the rule.

Defendant contends that OEC 803(18a)(b) and (d) together mean that, as applied to child victims of abuse, the hearsay exception applies only if the victim was a "child declarant" when she made the statements *and* when she testified at trial. Thus, according to defendant, the statements at issue here are inadmissible because M was not a "child declarant" when she testified, even though she was a "child declarant" when she made the statements.

Defendant bases that conclusion in part on the text of the rule, read in context. Defendant points out that "hearsay"

---

[8] The remaining text of OEC 803(18a)(b) addresses when a declarant is "unavailable" to testify at trial. Because the victim in this case was available and testified at trial, the provisions of the rule that address an "unavailable" declarant are relevant context but do not directly apply to the issue presented in this case.

[9] Among other things, "abuse" is defined in ORS 419B.005(1)(a)(D) as "[s]exual abuse, as described in ORS chapter 163." Defendant was convicted of first-degree sexual abuse, which includes, among other things, subjecting a person under 14 years of age to sexual contact. ORS 163.427(1)(a)(A).

is defined in OEC 801(3) as "a statement, *other than one made by the declarant while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted." (Emphasis added.) That means that a "declarant" can make a "statement" while testifying at trial in addition to making prior statements before trial. It follows, defendant contends, that statements that M had made when she was a "child declarant" are not admissible under OEC 803(18a)(b) because she was not a "child declarant" when she testified at trial. We disagree.

M was indisputably both a "child" and a "declarant" at the time that she made statements about the abuse to her mother, the CARES interviewer, and her friends. Those statements, made when M—the declarant—was 15 years old, were offered into evidence through the testimony of M's mother, M's two friends, and the CARES interviewer. It is that testimony—not M's own testimony at trial—that defendant contends should have been excluded. But that testimony was admissible under the text of the rule because (1) it was evidence of statements that M had made when she was a "child declarant"; and (2) M testified at trial and was subject to cross-examination.

That is all that is required by the text of the rule to make that evidence admissible. Nothing in the text conditions the admissibility of that evidence on the declarant's age when she testified at trial—that is, the rule does not expressly state that the witness must be a child at the time of her trial testimony. The rule requires that the declarant must testify at the proceeding and be subject to cross examination unless the declarant is "unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made ***." OEC 803(18a)(b). When the victim testifies, the admission of hearsay statements under the rule would not violate a defendant's constitutional right to confront their accuser.[10]

---

[10] The legislative history reflects that legislators were concerned about the constitutionality of the rule when the hearsay exception was first proposed. Senators asked witnesses at the first public hearing on the proposed bill to provide testimony on the constitutional issues. Tape Recording, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Tape 47, Side A (colloquy between Senator Robert C. Shoemaker and Yamhill County District Attorney John L. Collins). Supporters asserted that the proposed hearsay exception protected a defendant's right

The fact that a "statement" can be made by a declarant while testifying at trial is immaterial because defendant is not challenging the admissibility of statements that M made when she testified at trial. Rather, defendant is challenging the admissibility of the testimony of other witnesses—M's mother, M's friends, and the CARES interviewer—who related the statements that M had made when she was 15 years old. Because M was a child when she made those statements, the witnesses' testimony relating those statements to the jury was admissible under the text of the rule.[11]

The context of OEC 803(18a)(b) generally supports that understanding. *See PGE*, 317 Or at 611 (context includes other provisions of the same statute and other related statutes). As noted above, OEC 803(18a)(b) permits out-of-court statements to be admitted into evidence if the statements concern an act of "abuse" as defined in ORS 419B.005. That statute, in turn, generally refers to acts done to a "child." *See* ORS 419B.005(1)(a)(A) ("[a]ny assault *** of a child and any physical injury to a child"); ORS 419B.005(1)(a)(B) ("[a]ny mental injury to a child"); ORS 419B.005(1)(a)(C) ("[r]ape of a child"). "Child" is defined by ORS 419B.005(2)(a) as "an unmarried person" who is "under 18 years of age." And as noted above, "declarant" is defined in OEC 801(2) as "a person who makes a statement." Thus, a "child declarant" as used in OEC 803(18a)(d) is an unmarried person who is under

---

to confront the witnesses against them, and they emphasized that substantial indicia of reliability would be required for admission of a hearsay statement. *See* Exhibit C, Senate Committee on Judiciary, SB 275, Feb 27, 1989 (accompanying statement of Yamhill County District Attorney John L. Collins). They also highlighted cases from other jurisdictions upholding the constitutionality of analogous hearsay exceptions. *Id.* (citing *State v. Ryan*, 103 Wash 2d 165, 691 P2d 197 (1984), and *State v. Myatt*, 237 Kan 17, 697 P2d 836 (1985)). Opponents of the bill argued that the law was dangerous because it could allow some child sexual abuse trials to proceed "without any confrontation of the person that's made that accusation." Tape Recording, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Tape 46, Side A (statement of Robert Reed, Oregon Criminal Defense Lawyers Association).

[11] The dissenting opinion reads the text differently, concluding that OEC 803(18a)(b) and (d), read together, means that the "child declarant" must be a child at the time of trial. 373 Or at 509 (Duncan, J., dissenting). That is certainly one way to read the text, but it is not the only way. An equally plausible reading is that "child declarant" as used in OEC 803(18a)(d) means that the person making the statement at issue—the declarant—must be a child when the person made the statement, and that the text of OEC 803(18a)—unlike the text of OEC 803(24)—does not clearly specify that the person must also be a child when testifying at trial.

18 years of age who makes a statement. M was unmarried and 15 years of age when she made the statements that are in dispute in this case.

        The rule's allowance of the same out-of-court statements when they are made by an unavailable witness is also instructive. OEC 803(18a)(b) expressly provides that, if a declarant is "unavailable" to testify at trial, the declarant's out-of-court hearsay statement is admissible only if the declarant was under 12 years of age "when the statement was made." Because the declarant is unavailable to testify at trial, the declarant's age at the time of trial is irrelevant. What matters is the declarant's age at the time the statement was made. The same should be true of a testifying declarant. That is further contextual support for the conclusion that the legislature intended to condition admissibility on the declarant's age when the statement was made, not the declarant's age at the time of trial.

        Moreover, OEC 803(24), which cross-references OEC 803(18a), authorizes a trial court to take testimony outside the courtroom in some circumstances if the witness is "a child under 12 years of age *at the time of trial*." (Emphasis added.) The legislature enacted that rule in 1989, the same year that it enacted OEC 803(18a)(b). Or Laws 1989, ch 881, § 1 (enacting OEC 803(18a)(b)); Or Laws 1989, ch 300, § 1 (enacting OEC 803(24)). Specifying an age requirement for a witness "at the time of trial" in OEC 803(24)—but not in OEC 803(18a)(b)—supports the conclusion that no such requirement was intended in OEC 803(18a)(b).

        Context also includes the rules existing at the time of the enactment and prior versions of the current rule. *See State v. Ziska / Garza*, 355 Or 799, 806, 334 P3d 964 (2014) ("the context of a statute may include prior versions of the statute"); *State v. Blair*, 348 Or 72,76, 228 P3d 564 (2010) (context "includes the law as it existed before the adoption" of the statute at issue). As noted above, OEC 803(18a)(b) was first enacted in 1989.[12]

---

[12]  The 1989 version of the rule provided, in relevant part:

    "A statement made by a child victim who is under 10 years of age, which statement describes an act of sexual conduct performed with or on the child by another, is not excluded by [OEC 802] if the statement is offered as evidence

Under the existing rule before that enactment, evidence of "[a] complaint of sexual misconduct * * * after the commission of the alleged offense" was admissible under an exception to the hearsay rule, but the evidence was "confined to the fact that the complaint was made." OEC 803(18a) (1981). That rule applied to both adult and child victims of sexual abuse, and, as noted in the Legislative Commentary, was based on a well-established common-law rule. *See* Legislative Commentary to OEC 803(18a), *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 803.18a (7th ed 2020) (citing *State of Oregon v. Tom*, 8 Or 177 (1879), and other cases); *State v. Campbell*, 299 Or 633, 641-44, 705 P2d 694 (1985) (discussing history of OEC 803(18a) and the cases cited in the legislative commentary to that rule).

The rationale for the common-law rule was that an out-of-court complaint of sexual misconduct was sufficiently reliable that it should be admissible as evidence to corroborate the victim's testimony and to negate any inference that the victim had consented to the sexual conduct, although the consent rationale "was abandoned in child victim cases." *Campbell*, 299 Or at 644; *see also State v. Sargent*, 32 Or 110, 112-13, 49 P 889 (1897) (explaining that evidence of a past complaint of sexual misconduct was admissible to corroborate the victim's testimony because it would be "the natural instinct" of a victim to disclose the abuse "to a near relative or confidential friend").

Thus, when the legislature added paragraph (b) to OEC 803(18a) in 1989, out-of-court statements made by victims of sexual abuse—both adult and child victims—were already admissible, though limited to the fact that an abuse complaint had been made.[13] And this court held in *Campbell* that a complaint made by a child victim of sexual abuse was admissible under that rule even if the victim did not

---

in a criminal trial or juvenile court proceeding and if the child either testifies at the proceeding and is subject to cross-examination or is unavailable as a witness * * *."

OEC 803(18a)(b) (1989); *see also* Or Laws 1989, ch 881, § 1 (so demonstrating).

[13] That limitation—confining the testimony to the fact that an abuse complaint had been made—did not mean that the testimony was not hearsay. A witness testifying that a victim had previously told the witness that the victim had been abused is testimony offered for the truth of the matter asserted—that is, the fact of the report tended to corroborate that the victim had, in fact, been abused.

testify at trial. *Campbell*, 299 Or at 645. The 1989 addition of paragraph (b) to OEC 803(18a) thus expanded the scope of the existing hearsay exception to cover *all* prior out-of-court statements about the abuse—not just those establishing the fact that a complaint of sexual misconduct had been made— if the child victim was under the age of 10 and either testified at trial or was unavailable to testify.

That expansion of the scope of the existing hearsay exception is consistent with the purposes of the hearsay rule and the numerous exceptions to that rule that have been adopted by the legislature. For example, it is well established that out-of-court hearsay statements are generally inadmissible because they are not considered as reliable or trustworthy as statements made by a witness under oath subject to cross-examination. *See* John H. Wigmore, 5 *Evidence in Trials at Common Law* § 1362, 3 (3d ed 1940) ("The theory of the [h]earsay rule is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of [c]ross-examination.").

However, the many exceptions to the hearsay rule in the evidence code are based on legislative determinations that, under the circumstances described in each exception, the out-of-court statements are considered sufficiently reliable or trustworthy to make them admissible as evidence at trial. *See* Legislative Commentary to OEC 803, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 803.01 (7th ed 2020) (stating that the exceptions listed in OEC 803 are based upon "the theory that a hearsay statement may possess such circumstantial guarantees of trustworthiness" that the statement should be admitted regardless of whether the declarant is available to testify at trial). As one treatise explains, hearsay evidence "exhibits a wide range of reliability" and "is not by its inherent nature unworthy of any reliance in a judicial proceeding." 2 *McCormick on Evidence* § 245 at 185-86 (8th ed 2020). The exceptions to the hearsay rule thus reflect the legislature's attempt "to adjust the

rules of admissibility to variations in the reliability of hearsay[.]" *Id.*[14]

Consistent with the history of the common-law rule codified in OEC 803(18a) and other hearsay exceptions that have been adopted by the legislature, the exception in OEC 803(18a)(b) reflects a legislative determination that out-of-court statements made by a child victim of sexual abuse are sufficiently reliable to make them admissible, if the victim either testifies and is subject to cross-examination at trial, or is under 12 years of age and unavailable to testify.[15] A child victim's out-of-court statements about sexual abuse could tend to corroborate—or undermine—the victim's trial testimony. By making those out-of-court statements admissible under OEC 803(18a)(b), the legislature determined that the circumstances in which those statements were made gave them sufficient reliability to make them admissible. That legislative assessment is premised on the circumstances in which the statements were made—the victim's age and the assumption that a child victim would confide in a trusted friend, relative, or other person—not the victim's age at the time of trial. As noted above, whether a declarant testified at trial primarily addressed concerns about a defendant's confrontation rights, not the reliability of the declarant's out-of-court statements.

The legislative history to the 1989 enactment confirms that the legislature expanded the existing rule in part because it was satisfied that out-of-court statements made by child victims were sufficiently reliable to make them admissible. For example, then-Yamhill County District Attorney John Collins explained that the rule was needed because "the child's initial report and subsequent reports—*what may be the child's most candid statements*—[were] not admitted in court" under the existing rule, leaving the jury

---

[14] An example of this legislative effort was the enactment of OEC 803(26), Or Laws 1999, ch 945, § 1. That rule makes out-of-court statements describing an incident of domestic violence made by the victim within 24 hours after the incident admissible in certain circumstances. That reflects the legislature's determination that statements made close in time to the incident of domestic violence, under the circumstances specified in the rule, are sufficiently trustworthy that they should be admissible as evidence at trial.

[15] As we explain below, that conclusion is supported by statements in the legislative history of OEC 803(18a)(b).

to "speculate regarding what are very logical questions, *i.e.*, what did the child tell the first time it was reported; how did he or she act; how consistent was the child in subsequent statements?" Testimony, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Ex C (statement of John Collins) (emphasis added). A witness from the Oregon Department of Justice reiterated the desire to capture the "details and spontaneity" that may be included in a victim's earlier statements but absent from their courtroom testimony. Testimony, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Ex D (statement of Deborah Wilson).

Granted, another reason for the original bill was to protect child victims from the trauma that may be caused if they were required to testify at trial, as defendant points out. Because the rule as originally enacted only applied to child victims under 10 years of age even if they testified at trial, it is understandable that the legislative history of the original rule reflects that proponents of the bill and legislators were concerned that testifying in a courtroom could be traumatizing to young children.[16] But the original bill and subsequent amendments to the rule reflected other concerns without clearly indicating that the legislature intended the exception to apply only if the child victim was a child at the time of trial.

As relevant here, OEC 803(18a)(b) was amended in 1991, Or Laws 1991, ch 391, § 1, and again in 1999, Or Laws 1999, ch 945, § 1. The 1991 amendment removed the original age qualification for victims who testify at trial, and raised it to 12 years of age for victims who were unavailable to testify.[17] That textual change could be understood to

---

[16] For example, John Collins, then-Yamhill County District Attorney, explained that, in sexual abuse cases, children can be "highly traumatized emotionally by testifying in a courtroom setting." Tape Recording, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Tape 46, Side A. One legislative staff summary emphasized cases in which "children have 'frozen up' in trials," Staff Measure Summary, Senate Committee on Judiciary, SB 275, June 21, 1989, and another indicated that the bill would "allow the judicial system to be more sensitive to the needs of children and families who are victims of sexual abuse," Staff Measure Summary, House Committee on Judiciary, SB 275, June 2, 1989.

[17] The 1991 version of the rule provided, in relevant part:

"A statement made by a child victim, which statement concerns an act of sexual conduct performed with or on the child by another, is not excluded by [OEC 802] if the child either testifies at the proceeding and is subject to

support the conclusion that out-of-court statements made by a victim who was a child when she made the statements are admissible if the victim testifies at trial, regardless of her age at the time of her trial testimony.

On the other hand, the 1991 amendment did not change the text of the original rule that stated that the hearsay exception applies if "the child *** testifies" and is subject to cross examination. The intended meaning of that text is not entirely clear. The legislature's use of the definite article "the" "often signifies a narrowing intent, a reference to 'something specific, either known to the reader or listener or uniquely specified.'" *Hickey v. Scott*, 370 Or 97, 107, 515 P3d 368 (2022) (quoting *State v. Lykins*, 357 Or 145, 159, 348 P3d 231 (2015)). Thus, "the child" in the phrase "the child *** testifies" likely refers to "a child victim" of sexual abuse. That means that the victim must be a child at the time of the abuse, but it does not necessarily mean that she must still be a child at the time of her testimony. Although the 1991 amendment could be understood in that way, that understanding does not necessarily follow from a grammatical reading of the rule's text.

The legislative history of the 1991 amendment sheds little light on the legislature's likely intent. Nothing in the legislative history of that amendment clearly indicates that the rule was intended to apply *only* if a testifying victim was a child at the time of trial.

One legislator again mentioned that concerns about the emotional trauma that child witnesses may experience when called to testify at trial had motivated the legislature to enact the rule in 1989. *See* Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2395, Feb 22, 1991, Tape 40, Side B (statements by Representative Wayne Clark).[18] On the other hand, Chris

---

cross-examination or is under 12 years of age and is unavailable as a witness. However, when a child under 12 years of age is unavailable as a witness, the statement may be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability ***."

OEC 803(18a)(b) (1991); *see also* Or Laws 1991, ch 391, § 1 (so demonstrating).

[18] In addition to that testimony, the legislative staff summary of the 1991 amendment explained that the bill meant that "[a] statement made by an alleged

Gardner of the Oregon District Attorneys' Association testi-fied that the 1991 amendment to the rule "would allow the hearsay statements of the child concerning the abuse if she or he are available and actually testifies *regardless of their age*." *Id.* (statements of Chris Gardner) (emphasis added). That statement could simply emphasize that, for testifying victims, the statute no longer limited the rule to statements made by children under the age of 10, or it could mean that there was no age requirement at all for testifying victims.

In any event, the legislature amended the rule again in 1999, changing "the child * * * testifies" to "the declarant * * * testifies" and adding paragraph (18a)(d), which stated at that time that the rule "applies to a child declarant or an adult declarant with developmental disabilities." OEC 803(18a)(d) (1999).[19] Again, the significance of that change is not altogether clear. If the rule as amended in 1991 applied to statements made by a child victim regardless of the victim's age at the time of her testimony, the amendment adopted in 1999 could have simply confirmed that the declarant must have been a child when she made the statements at issue. Alternatively, if the rule as amended in 1991 applied only if a testifying victim was a child at the time of her testimony, then arguably, the 1999 amendment could have eliminated that limitation.[20] Another possibility, urged by defendant, is that the rule as adopted in 1989 and amended in 1991 has

---

*child victim (under 18 years of age)* concerning an act of sexual conduct would not be inadmissible under the hearsay rule *if the child testified as a witness*." Staff Measure Summary, Senate Committee on Judiciary, HB 2395B, June 10, 1991 (emphases added).

   [19] OEC 803(18a) (1999) provided, in relevant part:

   "(b) A statement made by a person concerning an act of abuse, as defined in ORS 107.705 or 419B.005, is not excluded by [OEC 802] if the declarant either testifies at the proceeding and is subject to cross-examination or was chronologically or mentally under 12 years of age at the time the statement was made and is unavailable as a witness. * * *

   "* * * * *

   "(d) This subsection applies to a child declarant or an adult declarant with developmental disabilities. * * *"

*See also* Or Laws 1999, ch 945, § 1 (so demonstrating). Although the rule has been amended since 1999, those changes do not affect our analysis.

   [20] However, as explained below, the legislative history of the 1999 amend-ment indicates that the textual changes were not intended to make substantive changes to the rule.

always applied only if the victim was a child at the time of her testimony, and the 1999 amendment did not change that requirement.

That last possibility is a plausible interpretation of the rule as it evolved over time, but the better reading of the rule's text, in context, does not support that interpretation, as explained above. Moreover, the legislative history of the 1999 amendment does not compel that understanding, considering the other plausible interpretations of the text.

The legislative history of that amendment does not indicate that the legislature understood that the rule prior to that amendment applied only if the testifying victim was a child at the time of her testimony, nor does it indicate that the legislature intended to broaden its scope by changing "the child" to "the declarant" in describing the testifying victim. Rather, the legislative history suggests that that change simply "change[d] the syntax of Section (18a) of the hearsay rule *** to employ consistently the term 'declarant.'" Testimony, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3395, Apr 23, 1999, Ex U (statement of Joel Shapiro).[21]

That legislative history also includes a statement that the rule "is not designed to deal with adults that are mentally operating as adults." Tape Recording, Senate Committee on Judiciary, HB 3395, June 16, 1999, Tape 241, Side A (testimony of Dale Penn of the Marion County District Attorney's Office). But that statement was inconsistent with a statement at the same legislative hearing that the text of the rule "is not as limited" as the first statement suggests. *Id.* (testimony of Ingrid Swenson, Oregon Criminal Defense Lawyers Association).[22]

---

[21] The 1999 bill that amended OEC 803(18a) also created a new hearsay exception for statements made by a victim of domestic violence to a police officer within 24 hours of the incident. Most of the discussion in the legislative history focused on that provision, not the amendment to OEC 803(18a). *See, e.g.,* Tape Recording, Senate Committee on Judiciary, HB 3395, June 16, 1999, Tape 240, Side B. In contrast, there was relatively little discussion specifically directed at OEC 803(18a)(b).

[22] In addition, the statement that the rule "is not designed to deal with adults" could have been referring to the portion of the rule that deals with victims who are unavailable to testify at trial, not victims who testify, because the person making the statement referred to a child "under the age of 12" (a qualifier

The 1991 and 1999 amendments to the rule, and the legislative history of those amendments, do not clearly demonstrate that the legislature intended the hearsay exception to be limited to statements made by a child victim of sexual abuse who testifies at trial and who remains a child victim at the time of her testimony. One thing *is* clear from the legislative history: The legislature *never* expressly discussed whether the rule applied if a child victim of sexual abuse turned 18 by the time she testified at trial.[23] Some of the discussions in the legislative history as the rule evolved over time could support the conclusion that the rule would not apply in those circumstances, but, taken as a whole, the legislative history does not clearly demonstrate that the legislature intended the rule to apply *only* to out-of-court statements made by child victims if they were still children at the time of their testimony.

Legislative history can support a narrower interpretation than indicated by statutory text if that history

---

that is relevant only to victims who are unavailable to testify at trial). The full statement was as follows:

"I'm very concerned that the Committee not be confused that the provision about the child witness is in some way an expanded hearsay exception that involves adults. *** [Referring to paragraph (18a)(d)], when it talks about *** the child witness part of this bill, it says, 'This subsection applies to a child declarant or an adult declarant with developmental disabilities.' *This is only designed with someone who is a child under the age of 12 or their mental age is to the point that their ability to express themselves is very minimal.* This is very clear. *This is not designed to deal with adults that are mentally operating as adults.*"

Tape Recording, Senate Committee on Judiciary, HB 3395, June 16, 1999, Tape 241, Side A (testimony of Dale Penn) (emphases added).

[23] The dissenting opinion does not dispute that point. It concludes from the enactment history that the legislature intended the hearsay exception to apply only when the child declarant remained a child at the time of trial, and it bolsters that conclusion with statements in the legislative history showing that part of the motivation for the rule was a concern about "the ability of young children to testify in court." 373 Or at 505 (Duncan, J., dissenting). That concern was certainly present when the legislature first established the hearsay exception, but the current version of the rule would apply to statements made by a child declarant even if the declarant was not a "young" child at the time of trial. Under the dissenting opinion's reading of the rule, those statements would be admissible under the rule if the testifying declarant was 16 or 17 years old at the time of trial. More fundamentally, the dissenting opinion does not dispute that the legislature did not directly address whether statements made by a child declarant would still be admissible under the rule if the child happened to turn 18 by the time of trial. Thus, the legislative history is only of limited help in determining whether the legislature intended the rule to apply to statements made by a child declarant if the declarant turned 18 by the time of trial.

"'reveals that the legislature had a narrower understanding of the term in mind, and if that narrower meaning is consistent with the text, even if not compelled by it.'" *State v. Nascimento*, 360 Or 28, 44, 379 P3d 484 (2016) (quoting *State v. Walker*, 356 Or 4, 17, 333 P3d 316 (2014)). As explained above, the legislative history of OEC 803(18a)(b) and (d), as it evolved over time, does not reveal that the legislature had a narrower understanding of the intended reach of the rule than the meaning reflected in the rule's text.

That text provides that out-of-court statements made by a *person* concerning child sexual abuse are admissible if the *declarant* testifies at trial, and nothing in paragraph (18a)(b) of the rule says anything about the declarant's age at the time of her trial testimony. Paragraph (18a)(d) of the rule, as constructed in 1999, stated that the rule "applies to a child declarant or an adult declarant with developmental disabilities."[24] That certainly confirms that the "declarant" must be a "child declarant" when she made the out-of-court statements that are offered under the rule, but it does not necessarily mean that she also must be a child at the time of her testimony. If that is what the legislature intended, it could have said so expressly, as it did in OEC 803(24). Nowhere in OEC 803(18a) did the legislature specify an age requirement that applies at the time of trial comparable to the age requirement that is specified in OEC 803(24).

In summary, we conclude that the text and context of OEC 803(18a)(b) show that that hearsay exception was intended to apply to out-of-court statements made by a person who was a child when she made the statements and who testifies and is available for cross-examination at trial, even if the person is no longer a child when she testifies. The legislative history does not establish that the legislature intended a narrower scope that would make the rule applicable only if the victim is still a child when testifying at trial, and such a limitation would be inconsistent with the text of the rule. Accordingly, we agree with the Court of Appeals that the trial court did not err in admitting

---

[24] The rule was amended again in 2001 to extend to a declarant who is an elderly person. Or Laws 2001, ch 533, § 1.

evidence of M's out-of-court hearsay statements under OEC 803(18a)(b).[25]

## III.   CONCLUSION

The trial court did not err in denying defendant's pretrial motion to exclude expert testimony about delayed disclosure because such testimony could be relevant to help the jury assess M's credibility regardless of defendant's contentions at trial, it was not inherently too prejudicial, and it did not categorically amount to inadmissible vouching. Nor did the trial court err in receiving testimony about what M had said when she disclosed the abuse at age 15. That evidence was admissible under OEC 803(18a)(b) even though M had turned 18 years of age when she testified at trial.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**DUNCAN, J.,** dissenting.

I write separately to address the second question presented on review, which concerns OEC 803(18a)(b). That statutory provision establishes hearsay exceptions, including an exception for statements by a child declarant about abuse that applies when the child declarant testifies and is subject to cross-examination. The question in this case is whether the child declarant must be a child at the time they testify. Based on the text, context, and legislative history of OEC 803(18a)(b), I conclude that the answer to that question is yes. Because the majority concludes otherwise, I respectfully dissent from that part of the majority's decision.

As relevant to the exception at issue in this case, the text of OEC 803(18a)(b) provides that the exception

---

[25] As noted above, defendant also contended in the Court of Appeals that its interpretation of an earlier version of OEC 803(18a)(b) in *Lamb*, 161 Or App 66, also supported his position. But the issue in *Lamb* was whether the rule "requires the exclusion of the out-of-court statements of a 17-year-old child victim." *Id.* at 69. The Court of Appeals held that the trial court erred in excluding those statements "when [the] victim was scheduled to testify in the proceeding and would have been available for cross-examination." *Id.* at 72. The Court of Appeals reached that conclusion, in part, because the 1991 amendment to OEC 803(18a)(b) removed the age qualification that was included in the rule as it was originally enacted in 1989. *Id.* at 71. We see nothing in the Court of Appeals' opinion in *Lamb* indicating that the legislature intended to exclude testimony about out-of-court statements made by a child declarant if she has turned 18 years of age by the time she testifies at trial.

applies if "the declarant" "testifies" and "is" subject to cross-examination. It uses the term "declarant" to refer to a person at the time of a trial or other proceeding where they testify. And a related provision, OEC 803(18a)(d), limits the exception to child declarants. That is, it modifies the term "declarant"—which is used in the exception to describe a person at the time of trial—with the term "child." Thus, the text of OEC 803(18a)(b), in context, indicates that, in order for the exception to apply, a person must be a child at the time they testify.

The legislative history—which shows both how the text of OEC 803(18a)(b) has evolved and what the exception at issue is intended to do—confirms that view. The legislature enacted OEC 803(18a)(b) in response to concerns about the potential weaknesses of in-court testimony by children, and it intended the exception to apply when children testify. Indeed, as originally enacted, the exception applied if "the child" testifies and is subject to cross-examination.

Later, OEC 803(18a)(b) was amended to apply to other potentially vulnerable witnesses, specifically, persons with developmental disabilities, and it provided that the exception applied if "the child or person with developmental disabilities" testifies and is subject to cross-examination. Thereafter, the phrase "the child or person with developmental disabilities" was simplified to "the declarant." That is, it was amended to read, as it currently does, that the exception applies if "the declarant" testifies and is subjection to cross-examination. But that change was not intended to be substantive; it was explained as a change in syntax. And, when the legislature simplified the phrase "the child or person with developmental disabilities" to "declarant," it carried forward the existing requirements regarding the status of the persons who must testify by adding a provision, now codified in OEC 803(18a)(d), stating, "This subsection applies to a child declarant or an adult declarant with developmental disabilities."

Thereafter, the legislature expanded the scope of OEC 803(18a)(b) to cover statements about abuse by another group of potentially vulnerable witnesses: elderly persons. And it amended OEC 803(18a)(d) to provide, "This

subsection applies to a child declarant, a declarant who is an elderly person as defined in ORS 124.050 or an adult declarant with developmental disabilities."

In keeping with the legislative intent underlying the exception, which was to provide a path for the admission of out-of-court statements by persons who could have difficulty testifying in court because of their age or disability, I would conclude that the child-hearsay exception at issue in this case applies only if the declarant is a child at the time of their testimony.

## I.   DISCUSSION

The question presented regarding OEC 803(18a) (b) is one of statutory construction. When construing a statute, this court's task is to discern the legislature's intent in enacting the statute. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible."). To do so, we examine the text and context of the statute, as well as any relevant legislative history. *Id*. If the legislature's intent remains unclear after examination of the statute's text, context, and legislative history, we apply general maxims of statutory construction to resolve the uncertainty. *Id*. at 172.

The text of a statute is the best evidence of the legislature's intent, but terms in a statute cannot be construed in isolation. *State v. Kellar*, 349 Or 626, 634, 247 P3d 1232 (2011). The legislature's purpose in enacting a statute can inform our understanding of the terms that the legislature used. *State v. Harrison*, 365 Or 584, 592, 450 P3d 499 (2019) (considering legislature's purpose in enacting statute when construing statute's text). And a statute's legislative history can provide evidence of that purpose. *Id*.; *State v. Walker*, 356 Or 4, 17, 333 P3d 316 (2014) (noting that legislative history may reveal the legislature's understanding of a term). In keeping with this court's method of statutory construction, I begin my analysis with an introduction to the current text of OEC 803(18a)(b) and explain why the statute's text—which uses the term "declarant" to refer to a trial witness—supports the view that the

hearsay exception at issue in this case applies only to trial witnesses who are children. I then review the legislative history, which confirms that view.

Before turning to the current text of OEC 803(18a)(b), however, it is worth emphasizing that the evidence code generally prohibits the admission of hearsay. OEC 801(3) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 802 establishes the "hearsay rule." It provides, "Hearsay is not admissible except as provided in [OEC 801] to [OEC 806] or as otherwise provided by law." The hearsay rule generally bars a witness from testifying about an out-of-court statement in order to prove the truth of the matter asserted, regardless of whether the out-of-court statement was made by the witness themselves or by another person. *State v. Schiller-Munneman*, 359 Or 808, 816, 377 P3d 554 (2016). In a criminal case, for example, the hearsay rule generally bars the complainant and all other witnesses from testifying about any out-of-court statements by the complainant about the crime, even if the complaint themselves testifies at trial. *Id*. at 817-18.

A.   *Current Text of OEC 803(18a)(b)*

The statute at issue in this case, OEC 803(18a)(b), was enacted in 1989, and it has been amended several times since. OEC 803(18a)(b) contains two hearsay exceptions: the one at issue in this case, which applies when the declarant testifies and is subject to cross-examination, and a second one that applies when the declarant is unavailable. As mentioned, OEC 803(18a)(b) originally applied only to certain hearsay statements by children, but it was amended to apply to certain hearsay statements by persons with developmental disabilities and elderly persons.

As the scope of the statute's hearsay exception was expanded to cover statements other than those by children, the terms in the statute became more generic and cross-references to other statutes were added. As a result, the statute became more challenging to parse. Currently, OEC 803(18a)(b) begins:

>      "*A statement made by a person concerning an act
> of abuse* as defined in ORS 107.705 or 419B.005, a state-
> ment made by a person concerning an act of abuse of an
> elderly person, as those terms are defined in ORS 124.050,
> or a statement made by a person concerning a violation of
> ORS 163.205 or 164.015 in which a person 65 years of age
> or older is the victim, *is not excluded by [OEC 802, the
> hearsay rule,] if the declarant either testifies at the
> proceeding and is subject to cross-examination*, or is
> unavailable as a witness but was chronologically or men-
> tally under 12 years of age when the statement was made
> or was 65 years of age or older when the statement was
> made. However, if a declarant is unavailable, the state-
> ment may be admitted in evidence only if the proponent
> establishes that the time, content and circumstances of the
> statement provide indicia of reliability, and in a criminal
> trial or juvenile delinquency proceeding that there is cor-
> roborative evidence of the act of abuse and of the alleged
> perpetrator's opportunity to participate in the conduct and
> that the statement possesses indicia of reliability as is con-
> stitutionally required to be admitted."

(Emphases added.)[1]

OEC 803(18a)(b) uses both the past and present tenses. It refers to a statement "made" in the past. And it governs whether such a statement "is" excluded in the present, that is, at the time of the court proceeding at which it is proffered (which, for convenience, I will refer to as the time of trial). Notably, OEC 803(18a)(b) uses the term "declarant" in connection with events at the time of trial. Whether the exception at issue in this case applies depends on whether "the declarant *** testifies at the proceeding and is subject to cross-examination." Thus, the statute uses the term "declarant" to refer to a person at the time of trial. That is significant because, as mentioned, OEC 803(18a)(d) provides that OEC 803(18a)(b) applies only to "a child declarant,

---

[1] OEC 803(18a)(b) is lengthy, and its original text and amendments are discussed in detail below. *See* 373 Or at 511-12 (Duncan, J., dissenting) (setting out original text in full); 373 Or at 516-21 (Duncan, J., dissenting) (discussing amendments). In addition to establishing the hearsay exceptions quoted here, it also requires that a party intending to rely on the exceptions notify adverse parties in the case in advance; identifies criteria to be considered when determining whether a declarant is unavailable; provides for the examination of the declarant outside the presence of the jury; and identifies factors to be considered when determining whether a hearsay statement is reliable.

a declarant who is an elderly person as defined in ORS 124.050 or an adult declarant with a developmental disability." Reading OEC 803(18a)(b) and (d) together indicates that the term "child declarant" refers to a person at the time of trial. That is, it indicates that the term "declarant" refers to a person at the time of trial, and so, when "child" modifies "declarant," a person must be a child at the time of trial.

That is not the only possible way to read the text of OEC 803(18a)(b). As the majority reads it, the text creates a hearsay exception for out-of-court statements made by a person who was a child at the time the statements were made, regardless of whether the person is an adult at the time of trial. Although that reading is possible, it is contradicted by the statute's legislative history, including both the evolution of the statute's text and the legislative discussions of its purpose, which I review next.

B.  *Legislative History of OEC 803(18a)(b)*

Because of how OEC 803(18a)(b) has evolved, the best way to understand the legislature's intent regarding the scope of the hearsay exception at issue in this case is to trace OEC 803(18a)(b) from its original form to its current form.[2] That tracing shows that the legislature enacted OEC 803(18a)(b) in response to concerns about the difficulties that children and other vulnerable persons might have testifying because of their age or disability. Correspondingly, it shows that the legislature intended the exception at issue in this case to apply only when the declarant is a child at the time of trial.

1.  *1981 - original version of OEC 803(18a) - complaint of sexual misconduct*

OEC 803(18a) was enacted in 1981. Or Laws 1981, ch 892, § 64. It established a hearsay exception for a complaint of sexual misconduct. It allowed for the admission of

---

[2] The legislature created OEC 803(18a)(b) in 1989, Or Laws 1989, ch 881, § 1, and, since then, has amended the provision eight times. *See* Or Laws 1991, ch 391, § 1; Or Laws 1995, ch 476, § 1; Or Laws 1995, ch 804, § 2; Or Laws 1999, ch 945, § 1; Or Laws 2001, ch 533, § 1; Or Laws 2007, ch 70, § 12; Or Laws 2017, ch 529, § 21; Or Laws 2023, ch 105, § 1. This discussion of the evolution of OEC 803(18a)(b) focuses on only those amendments that are relevant to the hearsay exception at issue in this case.

the fact that the complaint had been made; it did not allow for the admission of the statements comprising the complaint. It provided:

> "The following are not excluded by [OEC 802, the hearsay rule], even though the declarant is available as a witness:
>
> > "* * * * *
>
> "(18a) Complaint of sexual misconduct. A complaint of sexual misconduct made by the prosecuting witness after the commission of the alleged offense. Such evidence must be confined to the fact that the complaint was made."

### 2. *1989 - Creation of OEC 803(18a)(b) - child hearsay about sexual conduct*

In 1989, the legislature amended OEC 803(18a). Or Laws 1989, ch 881, § 1. The original text of the statute was renumbered as OEC 803(18a)(a), and the new text was added as OEC 803(18a)(b), which is the provision at issue in this case.

OEC 803(18a)(b) (1989) provided that certain statements by a child about sexual abuse were excepted from the hearsay rule if

> "*the child* either testifies at the proceeding and is subject to cross-examination or is unavailable as a witness and if the proponent of admissibility establishes to the satisfaction of the court outside the presence of the jury, if any, that the time, content and circumstances of the statement provide substantial indicia of reliability."

OEC 803(18a)(b) (1989) (emphasis added). Thus, the text of OEC 803(18a)(b) (1989) conveyed that the exception at issue in this case applied only if the person who made the statement was a child both at the time the statement was made and at the time of trial. By its plain terms, the exception applied only if "the child" testifies and is subject to cross-examination.

In addition to establishing new hearsay exceptions, OEC 803(18a)(b) (1989) also supplemented the factors set out in OEC 804, which trial courts are to consider when determining whether a potential witness is unavailable to testify.

The added factors related to concerns about the ability of "the child" to testify, including whether the child "is unable to communicate about the offense because of fear or other similar reason or is substantially likely, as established by expert testimony, to suffer lasting severe emotional trauma from testifying." OEC 803(18a)(b) (1989) also created a procedure for trial courts to examine "the child" in chambers when determining if the child was unavailable to testify, and it provided that "[t]he examination shall be conducted in the presence of the attorneys and the child's parent, legal guardian or other suitable adult as designated by the court."

OEC 803(18a)(b) (1989) applied only to statements by children under 10 years of age, which described "an act of sexual conduct performed with or on the child by another." In addition, it applied only in criminal trials and juvenile court proceedings.

Although OEC 803(18a)(b) (1989) is lengthy, it is helpful to set it out in full so that all of its provisions can be considered together:

> "*A statement made by a child victim who is under 10 years of age*, which statement describes an act of sexual conduct performed with or on the child by another, *is not excluded by [OEC 802, the hearsay rule]* if the statement is offered as evidence in a criminal trial or juvenile court proceeding and *if the child either testifies at the proceeding and is subject to cross-examination or is unavailable as a witness* and if the proponent of admissibility establishes to the satisfaction of the court outside the presence of the jury, if any, that the time, content and circumstances of the statement provide substantial indicia of reliability. However, when the child is unavailable as a witness, the statement may be admitted in evidence only if there is corroborative evidence of the act of sexual conduct and of the defendant's participation in the conduct. No statement may be admitted under this paragraph except upon motion of the state and unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown. *For purposes of this paragraph, in addition to those situations described in [OEC 804], the child shall be considered 'unavailable'*

*if the child has a substantial lack of memory of the subject matter of the statement, is presently incompetent to testify, is unable to communicate about the offense because of fear or other similar reason or is substantially likely, as established by expert testimony, to suffer lasting severe emotional trauma from testifying. Unless otherwise agreed by the parties, the court shall examine the child in chambers and on the record or outside the presence of the jury and on the record.* The examination shall be conducted in the presence of the attorneys and *the child's parent, legal guardian or other suitable adult as designated by the court.* The purpose of the examination shall be to aid the court in making its findings regarding the child's availability as a witness and the reliability of the child's statement. In determining whether a statement possesses substantial indicia of reliability under this paragraph, the court may consider, but is not limited to, the following factors:

"(A)   The child's personal knowledge of the event;

"(B)   The age and maturity of the child;

"(C)   Certainty that the statement was made, including the credibility of the person testifying about the statement and any motive the person may have to falsify or distort the statement;

"(D)   Any apparent motive the child may have to falsify or distort the event, including bias, corruption or coercion;

"(E)   The timing of the child's statement;

"(F)   Whether more than one person heard the statement;

"(G)   Whether the child was suffering pain or distress when making the statement;

"(H)   The nature and duration of any alleged abuse;

"(I)   Whether the child's young age makes it unlikely that the child fabricated a statement that represents a graphic, detailed account beyond the child's knowledge and experience;

"(J)   Whether the statement has internal consistency or coherence and uses terminology appropriate to the child's age;

"(K)   Whether the statement is spontaneous or directly responsive to questions;

"(L)   Whether the statement was elicited by leading questions; and

"(M)   Whether extrinsic evidence exists to show the accused's opportunity to commit the act to which the child's statement refers."

(Emphases added.) Thus, the plain text of OEC 803(18a)(b) (1989) shows that the legislature was focused on the ability of children to testify at trial. The term "child" appeared 20 times in the provision.

Of particular relevance to this case, when referring to the declarant at the time of trial, the legislature used the term "the child." It provided that the exception applied if "the child" either "testifies at the proceeding and is subject to cross-examination or is unavailable as a witness." The legislature's requirement that "the child" testify clearly shows that the legislature intended the exception to apply if the declarant was a child at the time of trial.

That reading of the plain text of the statute is confirmed by its legislative history. OEC 803(18a)(b) (1989) was enacted through Senate Bill (SB) 275 (1989). As detailed below, the bill's proponents repeatedly spoke about the difficulties young children might have testifying in court about abuse. They explained that young children might not be competent to testify because of their inability to understand the oath. They also explained that, even if competent to testify, children might have difficulty providing details, being complete, and being consistent in their testimony. And they explained that testifying can be traumatic for children. They told legislators that SB 275—with its two hearsay exceptions, one for when a child testifies and is subject to cross-examination and the other for when a child is unavailable—was directed at those problems.

When SB 275 was introduced in the Senate Judiciary Committee, professionals who worked in courts and with children testified about the problems that children might have testifying in court. John Collins, the Yamhill County District Attorney, told legislators that young children might

not understand the oath requiring them to tell the truth. Tape Recording, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Tape 47, Side A ("What is the problem, is kids being able to tell the judge what it means to tell the truth."). He also mentioned children who would be "highly traumatized emotionally by testifying in a courtroom setting." Tape Recording, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Tape 46, Side A. Betty Uchytil, the Assistant Administrator for the Children's Services Division, reported that young children may lack the "ability to verbalize in the courtroom the details of his or her abuse." Tape Recording, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Tape 46, Side A. And Cory Streisinger, the Governor's Legal Counsel, explained that, "[i]n many cases *** [t]he child, either because of the hostility of the situation or because of memory or simply because of very youthful age, will not be able to testify, or will not be able to testify completely." Tape Recording, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Tape 48, Side A. She further explained that, to remedy those potential weaknesses in child abuse cases, SB 275 would permit a child's out-of-court statements about abuse to be introduced into evidence in certain circumstances. *Id.*

At the same hearing, mothers of young children spoke about the difficulties their children might have testifying in court about abuse. Candy Bartell testified:

> "I believe that 10 years old and under are additionally traumatized permanently by having to appear in court. My 9-year-old son's therapist has told me that she will not allow her concurrence of him testifying because it could make him psychotic from going beyond what he already has to deal with in a courtroom setting that is very intimidating to a young child."

Tape Recording, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Tape 47, Side A. She also expressed concern about whether a young child would be able to express themselves and provide details when testifying in a courtroom, "an environment of a stark, impressive big room with microphones and strange people asking questions." *Id.*

Another mother, Cynda Knoll, told legislators that she was worried whether her young daughter would be able to testify in front of a jury:

> "But they say, with the doctor's evidence, with all the people she's told, and everything, all this stuff, if she goes before this jury and she can't talk, which she had a hard time doing, if she sits there before all these people and can't talk, that that's it, there's no case. No matter how many people she told, no matter what the physical evidence is, we have no case whatsoever if she can't speak up and talk to that jury. And she just barely made it through the competency hearing."

Tape Recording, Senate Committee on Judiciary, SB 275, Feb 27, 1989, Tape 46, Side B.

Like the witnesses who testified in support of SB 275, legislative staff members who summarized the bill for legislators focused on the potential difficulties children might have testifying in court. The Senate Staff Measure Summary for SB 275 referenced cases in which "children have 'frozen up' in trials." Staff Measure Summary, Senate Committee on Judiciary, SB 275-B, June 21, 1989. The House Staff Measure Summary stated that the bill would expand "the circumstances under which a child's out-of-court report of sexual abuse would be admissible in evidence," which would allow "the judicial system to be more sensitive to the needs of children and families who are victims of sexual abuse while prote[c]ting the rights of the defendant." Staff Measure Summary, House Committee on Judiciary, SB 275-A, June 2, 1989.

In sum, the legislative history of SB 275, which established the hearsay exception at issue in this case, shows that the legislature created the exception in response to concerns about the ability of young children to testify in court. The text of SB 275 referred to "the child" and used that term to describe the declarant at the time of trial. In keeping with that text, the proponents of the bill expressed concerns about age-related potential weaknesses of children's testimony at trial. The legislative history shows that the exception at issue here, which applies when a declarant testifies in court, was prompted by concerns that, because of age-related characteristics, children who testify in court

might not be able to adequately express themselves. It was intended to enable a party to proffer a child's out-of-court statement about abuse to support the child's in-court testimony, which could be deficient because of the child's age-related characteristics.

   3.   *1991 - Amendment of OEC 803(18a)(b) to cover statements by children 10 and older*

   The legislature amended OEC 803(18a)(b) in 1991. Or Laws 1991, ch 391, §1. Among other changes, the legislature expanded the scope of the hearsay exceptions to cover statements by children 10 years of age and older. As mentioned, when OEC 803(18a)(b) was enacted in 1989, it applied to "[a] statement made by a child victim who is under 10 years of age" that described an act of sexual conduct performed with or on the child. In 1991, the legislature deleted the phrase "who is under 10 years of age" so that OEC 803(18a)(b) would apply to statements by children 10 years and older about such conduct. With the deletions and additions showing, the relevant part of the first sentence of OEC 803(18a)(b) read:

   "A statement made by a child victim, **which statement concerns** ~~who is under 10 years of age, which statement describes~~ an act of sexual conduct performed with or on the child by another, is not excluded by [OEC 802, the hearsay rule] if the child *** testifies at the proceeding and is subject to cross-examination[.]"

OEC 803(18a)(b) (1991) (new text in boldface; deleted text struck-through). The amendment did not affect the text relevant to the issue in this case; OEC 803(18a)(b) continued to provide that a child's statement was not excluded by the hearsay rule if "the child *** testifies at the proceeding and is subject to cross-examination." Thus, OEC 803(18a)(b) continued to refer to the person who had to testify at trial as "the child."

   The 1991 amendments were the product of House Bill (HB) 2395 (1991). Like the proponents of SB 275 that created OEC 803(18a)(b), the proponents of HB 2395 expressed concerns about the ability of children to testify in court. *See* Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2395, Feb 27, 1991,

Tape 45, Side A (statement of Rep Marie Bell) (commenting that children older than 10 years of age might "not be able to come to court and talk about the abuse that occurred").

4. *1995 - Amendment of OEC 803(18a)(b) to Cover Additional Statements, Including Statements by Persons with Developmental Disabilities*

In 1995, the legislature amended OEC 803(18a)(b) again. As relevant here, it made two changes through two different bills.

First, the legislature expanded the hearsay exceptions to apply to statements about additional forms of abuse, specifically statements about "abuse, as defined in ORS 419B.005." Or Laws 1995, ch 476, § 1; HB 2912 (1995). As amended, the first sentence of OEC 803(18a)(b) read:

"A statement made by a child victim, which statement concerns an act of **abuse, as defined in ORS 419B.005, or** sexual conduct performed with or on the child by another, is not excluded by [OEC 802, the hearsay rule] if the child \*\*\* testifies at the proceeding and is subject to cross-examination[.]"

(New text in boldface.) Corresponding changes were made throughout OEC 803(18a)(b), so that references to "sexual conduct" were changed to references to "abuse" or "sexual conduct." ORS 419B.005 is a provision of the juvenile code that defines "abuse" for the purposes of that code. The definition is not limited to child sexual abuse; it includes other forms of child abuse. Consequently, the result of the amendment was to expand the hearsay exception to statements about abuse other than the previously covered statements about sexual conduct.

Second, the legislature expanded all of OEC 803(18a)(b) to apply to persons with developmental disabilities. Or Laws 1995, ch 804, § 2; HB 3359 (1995). All references to "the child" were supplemented with references to a "person with developmental disabilities." Consequently, the first sentence of OEC 803(18a)(b) was amended to read:

"A statement made by a child victim **or person with developmental disabilities as described in paragraph (d) of this subsection**, which statement concerns

an act of sexual conduct performed with or on the child **or person with developmental disabilities** by another, is not excluded by [OEC 802, the hearsay rule] if the child **or person with developmental disabilities** * * * testifies at the proceeding and is subject to cross-examination[.]"

OEC 803(18a)(b) (1995) (new text in boldface).

In connection with its expansion of OEC 803(18a)(b) to persons with developmental disabilities, the legislature added a new paragraph to define "person with developmental disabilities": OEC 803(18a)(d) (1995).[3]

The expansion of OEC 803(18a)(b) to persons with developmental disabilities was prompted by concerns similar to those that had led to the creation of OEC 803(18a)(b) in the first place—that is, concerns about the abilities of certain persons to testify in court. As one proponent of the amendment explained, "Far too many individuals with disabilities are victims of sexual abuse, and the courtroom is far too intimidating for people with developmental disabilities." Exhibit N, House Committee on Judiciary, Subcommittee on Juvenile Justice, HB 3359, Apr 3, 1995 (statement of Eugene Organ, Oregon Disabilities Commission).

5.  *1999 - Amendment of OEC 803(18a)(b) to cover additional statements and change "child or person with developmental disabilities" to "declarant"*

In 1999, the legislature amended OEC 803(18a)(b) again. Or Laws 1999, ch 945, § 1; HB 3395 (1999). The 1999 amendment expanded the scope of the hearsay exceptions to an additional type of statement, specifically, statements

---

[3] OEC 803(18a)(d) (1995) provided:

"For the purposes of this subsection, 'developmental disabilities' means any disability attributable to mental retardation, autism, cerebral palsy, epilepsy or other disabling neurological condition that requires training or support similar to that required by persons with mental retardation, if either of the following apply:

"(A) The disability originates before the person attains 22 years of age, or if the disability is attributable to mental retardation the condition is manifested before the person attains 18 years of age, the disability can be expected to continue indefinitely, and the disability constitutes a substantial handicap to the ability of the person to function in society.

"(B) The disability results in a significant subaverage general intellectual functioning with concurrent deficits in adaptive behavior that are manifested during the developmental period."

about abuse as defined by ORS 107.705, which defines abuse for the purposes of the Family Abuse Prevention Act. As defined by ORS 107.705, "abuse" is not limited to child abuse; it includes certain acts "between family or household members," and it defines "family or household members" to include spouses, former spouses, adult persons related by blood, marriage or adoption, persons who are cohabiting with each other or have cohabitated with each other, and persons who have been involved in a sexually intimate relationship within a specified time period. The purpose of the change was to extend OEC 803(18a)(b)'s hearsay exceptions to statements about observations of abuse of family members. *See* Tape Recording, Senate Committee on Judiciary, HB 3395, June 16, 1999, Tape 240, Side B (testimony of Dale Penn, Marion County District Attorney's Office).

In addition, and of particular importance to the statutory construction issue in this case, the 1999 amendment changed the phrase "child or person with developmental disabilities" to "person" or "declarant." As mentioned, when the legislature amended OEC 803(18a)(b) in 1995 to cover statements by persons with developmental disabilities, it changed references to "the child" to references to "the child or person with developmental disabilities." Those changes were numerous and, consequently, the text of OEC 803(18a)(b) became longer and more cumbersome. The 1999 changes of the phrase "child or person with developmental disabilities" to "person" or "declarant" made the statute more readable.

With the deletions and additions showing, the relevant portion of the first sentence of OEC 803(18a)(b) read:

"A statement made by a~~ child victim or person with developmental disabilities as described in paragraph (d) of this subsection~~ **a person** ~~which statement concerns~~ **concerning** an act of abuse, as defined in ORS **107.705 or** 419B.005, ~~or sexual conduct performed with or on the child or person with developmental disabilities by another~~ is not excluded by [OEC 802, the hearsay rule] if the ~~child or person with developmental disabilities~~ **declarant** * * * testifies at the proceeding and is subject to cross-examination[.]"

OEC 803(18a)(b) (1999) (new text in boldface; deleted text struck-through). Without the deletions and additions showing, the sentence read:

> "A statement made by *a person concerning* an act of abuse, as defined in ORS 107.705 or 419B.005 is not excluded by [OEC 802, the hearsay rule] if the *declarant* \*\*\* testifies at the proceeding and is subject to cross-examination[.]"

(Emphases added.) Thus, OEC 803(18a)(b) (1999) provided, as it does today, that certain statements are excluded from the hearsay rule if "the declarant" testifies and is subject to cross-examination. The term "declarant" replaced "child or person with disabilities," but the change was intended only to simplify the text; it was not intended to be a substantive change. That is evident from the fact that, when the legislature made the change, it simultaneously inserted new text specifying that "[t]his subsection applies to a child declarant or an adult declarant with developmental disabilities." OEC 803(18a)(d) (1999). Thus, the hearsay exceptions of OEC 803(18a)(b) continued to apply only to certain types of witnesses—specifically, children and persons with developmental disabilities—who might have particular difficulties testifying in court.

The legislative history of the 1999 amendment, which was a product of House Bill (HB) 3395 (1999), confirms that understanding. As a proponent of HB 3395 informed the legislature, "[t]he bill would also change the syntax of Section (18a) of the hearsay rule \*\*\* to employ consistently the term 'declarant,' and to clarify the application of the term 'developmental disability.'" Exhibit U, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3395, Apr 23, 1999 (testimony of Joel Shapiro, Multnomah County District Attorney's Office). Thus, the legislative history of HB 3395 indicates that the 1999 amendment to OEC 803(18a)(b), which, as relevant here, replaced the phrase "child or person with developmental disabilities" with the term "declarant," was intended to be a syntactical change, not a substantive change. Therefore, the 1999 amendment did not change the fact that the hearsay exception at issue in this case applies only if the "child" testifies, which means

that the person who made the hearsay statement must be a child at the time of the trial.

6. *2001 - Amendment of OEC 803(18a)(b) to cover statements by elderly persons*

Although the text of OEC 803(18a)(b) that is relevant to the hearsay exception at issue in this case has not changed since 1999, there have been other changes that reinforce the view that OEC 803(18a)(b) is intended to apply to persons who might have difficulty testifying in court because of their age or disability. In 2001, the legislature amended OEC 803(18a)(b) to expand the coverage of its hearsay exceptions to statements by elderly persons. Or Laws 2001, ch 533, § 1; SB 780 (2001). It amended the relevant part of the first sentence of OEC 803(18a)(b) to read:

> "A statement made by a person concerning an act of abuse as defined in ORS 107.705 or 419B.005, **a statement made by a person concerning an act of abuse of an elderly person, as those terms are defined in ORS 124.050, or a statement made by a person concerning a violation of ORS 163.205 or 164.015 in which a person 65 years of age or older is the victim,** is not excluded by [OEC 802, the hearsay rule] if the declarant * * * testifies at the proceeding and is subject to cross-examination[.]"

OEC 803(18a)(b) (2001) (new text in boldface). As before, the hearsay exception applied if "the declarant" "testifies" and "is" subject to cross-examination. In other words, OEC 803(18a)(b) continued to use the term "declarant" in connection with present-tense verbs to describe a person at the time of trial. And it continued to be limited to certain types of declarants. When the legislature amended OEC 803(18a)(b) to cover statements by elderly persons, it simultaneously amended OEC 803(18a)(d), which describes the types of declarants covered. Specifically, it amended OEC 803(18a)(d) to read: "This subsection applies to a child declarant, **a declarant who is an elderly person as defined in ORS 124.050** or an adult declarant with developmental disabilities." OEC 803(18a)(d) (2001) (new text in boldface). Thus, the legislature continued to limit OEC 803(18a)(b) to persons who might have difficulty testifying because of their age or disability.

C.   *Summary*

       In sum, the text, context, and legislative history of
the hearsay exception at issue in this case, which applies to
child hearsay statements when the declarant testifies and is
subject to cross-examination, all support the conclusion that
the exception applies only if the declarant is a child at the
time of their testimony and cross-examination.

       The relevant text of OEC 803(18a)(b) shows that
"declarant" is used to describe a person at the time of the
trial or other proceeding. It is used in connection with pres-
ent-tense verbs. The exception applies only if "the declarant"
"testifies" and "is" subject to cross-examination. That indi-
cates that the exception applies to a person's hearsay state-
ments only if the person is a "declarant" at the time of trial,
which is significant because OEC 803(18a)(d) expressly lim-
its the application of the exception to certain types of declar-
ants, including, as relevant here, child declarants. Thus, the
text of OEC 803(18a)(b) and (d) indicate that the exception
applies only if the person who made the statement is a child
at the time of trial.

       If there was any question about that reading of
the text of OEC 803(18a)(b), it is resolved by the legislative
history of the provision, which does two things. First, the
legislative history clearly shows how the term "declarant"
came to be in OEC 803(18a)(b). As detailed above, when it
was first created in 1989, the exception at issue in this case
applied if "the child" "testifies" and "is" subject to cross-
examination. That text indicated that the person who made
the statement had to be a child at the time of trial. Then,
after OEC 803(18a)(b) was expanded to cover persons with
developmental disabilities and the text of the rule became
cumbersome, the legislature simplified the text in 1999,
by replacing the phrase "child or person with developmen-
tal disabilities" with "declarant." But that change was not
intended to be substantive. So, the legislative history regard-
ing the evolution of the text of OEC 803(18a)(b) establishes
that the exception at issue applies only when the declarant
is a child at the time of trial. Second, the legislative his-
tory clearly conveys the purpose of the provision. It shows
that the legislature intended the exception at issue here to

apply when children testify. The exception was created in response to concerns about difficulties children might have testifying in court because of their age. Those concerns were expressed throughout the discussions of OEC 803(18a)(b), from its creation and through its many amendments. At no time did the proponents of the exception state that the exception would apply to persons who were adults at the time of trial and, therefore, would not have the age-related challenges to testifying that the proponents were concerned about. Moreover, the legislature's expansion of the exception to other groups—specifically, persons with developmental disabilities and elderly persons—reinforces the conclusion that the legislature intended the exception to apply to persons who might have difficulty testifying in court because of their age or disability.

Based on the text, context, and legislative history of OEC 803(18a)(b), I would conclude that the hearsay exception at issue in this case applies only when the person who made the statement is a child at the time of the trial or other proceeding where the hearsay statement is proffered. Because the majority concludes otherwise, I respectfully dissent.[4]

---

[4] The majority relies on the second hearsay exception in OEC 803(18a)(b), which applies if "the declarant" is unavailable and other requirements are met. As created in 1989, the unavailability exception expressly applied to children. OEC 803(18a)(b) provided for the admission of certain statements if "the child" "is unavailable" and other conditions are satisfied. The legislature created the exception in response to concerns about children being unavailable to testify because of age-related characteristics. Moreover, when the legislature created the exception, it also identified a child-focused process for determining unavailability. Thus, when originally created, the unavailability exception expressly applied to children and that application was consistent with the exception's purpose and context.

As discussed, when, in 1999, the legislature amended OEC 803(18a)(b) through HB 3395, to change the phrase "child or person with developmental disabilities" to "declarant," the legislature did not intend that change to be substantive. Therefore, the unavailability exception should be construed, as it was originally intended, to apply to persons who are children at the time of the trial or other proceeding where their statements are proffered. Indeed, a proponent of the 1999 change, Dale Penn of the Marion County District Attorney's Office, assured the legislature that HB 3395 would not expand the provision about "the child witness" to "adults." Referencing OEC 803(18a)(d), he stated:

"I'm very concerned that the Committee not be confused that the provision about the child witness is in some way an expanded hearsay exception that involves adults. * * * [Referring to paragraph (18a)(d)], when it talks about the

James and Masih, JJ., join in this dissenting opinion.

---

child part of the child witness part of this bill it says, 'This subsection applies
to a child declarant or an adult declarant with developmental disabilities.'"

Tape Recording, Senate Committee on Judiciary, HB 3395, June 16, 1999, Tape
241, Side A (statement of Dale Penn). Thus, he emphasized that the change from
"child or person with developmental disabilities" to "declarant" was not intended
to change the scope of the hearsay exceptions.